# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Herbert ROCCO**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 16-1290 |
| | ) |
| **GORDON FOOD SERVICE**, | ) |
| | ) |
| Defendant. | ) |

## OPINION

CONTI, Chief District Judge

### I. Introduction

This lawsuit is the second time plaintiff Herbert Rocco ("Rocco") has asserted claims of employment discrimination against his former employer Gordon Food Service ("GFS"). The first lawsuit, civil action number 11-585 ("Rocco I"), came to a close when the Court of Appeals for the Third Circuit affirmed this court's order granting summary judgment in favor of GFS. Presently pending before the court in this case, i.e., civil action number 16-1290 ("Rocco II"), are GFS' motion to dismiss the amended complaint (ECF No. 21) and Rocco's motion for leave to file a second amended complaint (ECF No. 31).

On February 7, 2017, the court held a hearing with respect to GFS' motion to dismiss the amended complaint. The court granted the motion to dismiss with respect to the claims asserted under the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 701-796*l*, and the claims titled "regarded as and record of disability" asserted under the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12112-12213, and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. CONS. STAT. §§ 951-963. With respect to Rocco's claims for retaliation asserted under the ADA and the PHRA, the court explained that it was unclear whether Rocco

set forth factual allegations sufficient to plausibly show that GFS' adverse employment action occurred after or contemporaneous with Rocco's protected activity, which is required to plead a prima facie case under either statute. The court permitted the parties to file supplemental briefing with respect to that issue. The court also permitted Rocco to file a motion for leave to file a second amended complaint with respect to those claims.

As explained fully in this opinion, the motion for leave to file a second amended complaint will be granted because Rocco in the proposed second amended complaint set forth factual allegations sufficient to state plausible claims for retaliation under the ADA and PHRA. In light of permitting Rocco to file a second amended complaint, GFS' motion to dismiss will be denied as moot with respect to the claims for retaliation asserted under the ADA and the PHRA

## II. Background and Procedural History

### A. Rocco I

On May 4, 2011, Rocco filed a complaint against GFS and Reed Group under the ADA and the PHRA "for denial of employment, failure to accommodate on the basis of actual, regarded as or record of disability, and violations of medical inquiry." (Civ. Action No. 11-585, ECF No. 1 ¶ 1.) Rocco alleged, among other things, that:

> Defendants discriminated against Mr. Rocco in failing to accommodate him and terminating him based upon his disabilities by failing to return him to work in his former occupation with or without accommodations including modified duty, reassignment to alternate positions or by refusing to provide a medical leave of absence.

(Id. ¶ 18.) On December 6, 2011, Rocco filed an amended complaint in Rocco I. The only change made by Rocco in the amended complaint was that he removed Reed Group as a defendant in that case. (Civ. Action No. 11-585, ECF Nos. 16 and 17.) On December 20, 2011, GFS filed an answer to the amended complaint. (Civ. Action No. 11-585, ECF No. 19.)

On February 25, 2013—after conducting discovery—Rocco filed a second amended complaint in <u>Rocco I</u> and added claims for retaliation under the ADA, PHRA, and Rehabilitation Act. (Civ. Action No. 11-585, ECF No. 38.) GFS filed a motion to dismiss the second amended complaint arguing that the retaliation claims should be dismissed because Rocco did not exhaust his administrative remedies with respect to the new retaliation claims. GFS explained that Rocco's new retaliation claims were based upon events that occurred *after* the EEOC investigation upon which Rocco's *other* claims were based, and, therefore, the retaliation claims were not within the scope of that EEOC investigation. (Civ. Action No. 11-585, ECF No. 39.) The court agreed with GFS with respect to the retaliation claims under the ADA and the PHRA and dismissed those claims. The court denied the motion to dismiss with respect to the retaliation claims under the Rehabilitation Act. (Civ. Action No. 11-585, Minute Entry dated May 13, 2013.)

On August 2, 2013, GFS filed a motion for summary judgment. (Civ. Action No. 11-585, ECF No. 45.) On February 10, 2014, the court granted GFS' motion explaining:

> [T]he court concludes that no reasonable jury could find that plaintiff was disabled at the time of the adverse employment decision. Defendant is therefore entitled to summary judgment on the claims for termination and failure to accommodate under the ADA and PHRA. The Rehabilitation Act claims are dismissed with the consent of the plaintiff. All other claims have been dismissed, and this case will be closed.

(Civ. Action No. 11-585, ECF No. 58 at 10.) Rocco appealed to the Court of Appeals for the Third Circuit, among other orders, the court's order granting summary judgment to GFS. (Civ. Action No. 11-585, ECF No. 65.) On July 2, 2015, the court of appeals affirmed the district court's order granting summary judgment in favor of GFS. (Civ. Action No. 11-585, ECF No. 71-1.) The court of appeals explained:

> Based on Rocco's allegations, as of January 2010 he did not have a physical or mental impairment that substantially limited one or more of his major life activities. Accordingly, Rocco did not demonstrate a necessary element of his prima facie case.

(Id. at 5.)

### B. Rocco II

On August 23, 2016, Rocco filed the complaint in this action. (ECF No. 1.) Rocco asserted the following claims against GFS: (1) retaliation under the ADA, Rehabilitation Act, and PHRA (count I); and (2) regarded as and record of disability under the ADA, Rehabilitation Act, and PHRA (count II). (ECF No. 1.) On November 18, 2016, Rocco filed an amended complaint asserting the following claims: (1) retaliation under the ADA and PHRA (count I); (2) regarded as and record of disability under the ADA and PHRA (count II); (3) retaliation under the Rehabilitation Act (count III); and (4) regarded as and record of disability under the Rehabilitation Act. (ECF No. 17.)

On December 5, 2016, GFS filed a motion to dismiss and brief in support of the motion. (ECF Nos. 21, 22.) In its motion and brief in support, GFS argued:

- all claims in the amended complaint are barred by *res judicata* because the claims were asserted in Rocco I or could have been asserted in that case;

- the Rehabilitation Act claims failed as a matter of law because: (1) they were barred by issue preclusion, and (2) the Rehabilitation Act does not apply to federal procurement contractors; and

- all claims in the complaint failed as a matter of law because Rocco did not exhaust his administrative remedies, i.e., he did not timely file administrative charges with the appropriate agencies with respect to those claims.

(ECF No. 22.) On December 27, 2016, Rocco filed a response in opposition to the motion to dismiss the amended complaint. (ECF No. 25.) On January 18, 2017, GFS—with leave of court—filed a reply brief in support of its motion to dismiss. (ECF No. 28.)

On February 7, 2017, the court held a hearing with respect to the motion to dismiss the amended complaint and the parties' filings related to that motion. At the hearing, counsel for Rocco withdrew the claims asserted under the Rehabilitation Act (counts III and IV).[1]

With respect to the claims titled "regarded as and record of disability under the ADA and PHRA" (count II), the court explained that Rocco was barred by the doctrines of *res judicata* and claim preclusion from relying upon any factual allegations that were known or could have been known to Rocco in Rocco I. The court held that the regarded as and record of disability claims asserted under the ADA and PHRA would be dismissed on that basis.

With respect to the retaliation claims asserted under the ADA and PHRA (count I), the court explained that—based upon its initial reading of the amended complaint—Rocco failed to plausibly show that GFS retaliated against him for partaking in protected activity. The court reasoned that a retaliatory act cannot predate the protected activity. Counsel for Rocco argued to the court that the retaliatory action in this case occurred on or around November 13, 2012, and March 27, 2013,[2] when Rocco applied—but was not hired—for various positions with GFS. Based upon the court's preliminary review of the allegations in the amended complaint, however, GFS' decision to not hire Rocco for the positions for which he applied on November 13, 2012, and March 27, 2013, was made on February 9, 2010, when GFS marked him ineligible

---

[1] Counsel for Rocco agreed with the court that Rocco in the first lawsuit could have asserted the claims under the Rehabilitation Act, but the Rehabilitation Act was not applicable to GFS due to GFS' lack of federal financial assistance.

[2] Rocco in the amended complaint alleged that he applied for various positions with GFS—for which he was not hired—on at least five separate dates, i.e., September 11, 2011, January 8, 2012, June 11, 2012, November 13, 2012, and March 27, 2013. The court explained that the only dates that were potentially actionable were November 13, 2012, and March 27, 2013, because: (1) Rocco filed his charge of discrimination with the EEOC on May 13, 2013; (2) charges filed with the EEOC must be filed within 300 days of the day on which the alleged discrimination occurred; (3) the alleged acts of discrimination that occurred on September 11, 2011, January 8, 2012, June 11, 2012, occurred more than 300 days prior to May 13, 2013.

5

for rehire. The court explained that if GFS' retaliatory act, i.e., marking Rocco ineligible for rehire on February 9, 2010, predated Rocco's protected activity, i.e., filing a charge of discrimination with the EEOC on May 27, 2010, filing the complaint in Rocco I on May 4, 2011, or litigating Rocco I, Rocco failed to set forth factual allegations sufficient to state a plausible claim of retaliation under any applicable statute.

Counsel for Rocco argued in response to the court's preliminary assessment that the amended complaint contained factual allegations that called into question the date on which the decision to rehire Rocco was made and who made the decision. The court permitted the parties to file supplemental briefing with respect to those issues.

On February 21, 2017, Rocco filed its supplemental response in opposition and a motion for leave to file a second amended complaint. (ECF Nos. 30, 31.) Rocco attached a copy of the proposed second amended complaint to his motion. (ECF No. 31-1.) Rocco in the proposed second amended complaint set forth one count, i.e., claims for retaliation under the ADA and PHRA. (Id.) On March 7, 2017, GFS filed a supplemental brief addressing Rocco's supplemental response in opposition and motion for leave to file a second amended complaint. (ECF No. 32.)

The issues raised by the motion to dismiss the amended complaint and motion for leave to file a second amended complaint are now ripe to be decided by the court.

### III. Factual allegations in the proposed second amended complaint[3]

GFS is a corporation with the purpose of operating food services. (ECF No. 31-1 ¶ 5.) Rocco served as an employee of GFS for approximately ten years as a delivery driver and loader. (Id. ¶ 6.) On or about May 12, 2009, Rocco sustained an injury, and subsequently received

---

[3] All the allegations in the proposed second amended complaint appear in the amended complaint. Rocco in the proposed second amended complaint omitted counts II-IV of the amended complaint and the factual allegations with respect to those claims. (ECF No. 31-1.)

medical treatment for his right knee and completed a course of rehabilitation. (Id. ¶ 7.) On or about January 15, 2010, GFS learned that Rocco would be released to work full duty on January 21, 2010. (Id. ¶ 8.) On or about January 21, 2010, GFS terminated Rocco's employment and told him it was because no jobs were available. (Id. ¶ 9.)

On May 27, 2010, Rocco filed with the Equal Employment Opportunity Commission ("EEOC") his first charge of discrimination against GFS. (Id. ¶ 10.) On May 4, 2011, Rocco filed an employment discrimination lawsuit with this court, i.e., Rocco I. (Id. ¶ 33.) On October 4, 2012, Rocco took GFS's deposition, pursuant to Federal Rule of Civil Procedure 30(b)(6). The Rule 30(b)(6) representative for GFS testified that Rocco was terminated because "no positions [were] open at that time." (ECF No. 31-1 at 2 n.1.) According to Rocco, that testimony "impl[ied] that he was eligible for rehire." (Id.)

Rocco applied for various positions at GFS on September 11, 2011, January 8, 2012, June 11, 2012, November 13, 2012, and March 27, 2013. (Id. ¶ 11.) According to Rocco, he is qualified for the positions for which he applied on those dates and should be hired for those positions over new hires with GFS. (Id. ¶ 31.) Rocco was not selected for an interview for the positions for which he applied and did not receive a response from GFS informing him that he was not hired for those positions. (Id. ¶¶ 12, 31.) Rocco applied for other positions with GFS, but was "locked out of the online account for [GFS] and…unable to retrieve other dates." (Id. ¶ 15.) The applicants chosen for the positions for which Rocco applied "were less qualified than…Rocco based upon his ten years of work experience at Gordon Food Service." (Id. ¶ 32.)

On May 10, 2013, GFS responded to a second set of interrogatories from Rocco. In the response GFS indicated that on or about February 9, 2010, Chris Zitello ("Zitello"), an employee

of GFS and one of Rocco's supervisors, marked Rocco ineligible for rehire. (ECF No. 31-1 ¶¶ 13, 20.)

On May 13, 2013, Rocco filed a second charge with the EEOC "for retaliation regarding the failure to hire claims." (Id. ¶ 14.) The second charge identifies the retaliation as a "continuing action" for the denial of employment based upon GFS's "continued hiring in Western Pennsylvania, including a large distribution center in Findlay Township estimated to bring 300 jobs, according to an article in the Pittsburgh Business Times dated July 26, 2013." (ECF No. 31-1 ¶ 17.)

According to GFS, its legitimate nondiscriminatory reason for refusing to rehire Rocco was his prior work history and prior performance issues. (ECF No. 31-1 ¶ 25.) GFS claims that it reviewed Rocco's work history and performance record before deeming Rocco ineligible for rehire. (Id. ¶ 18.) GFS never informed Rocco of any performance issues; indeed, "[n]o performance issues existed after Rocco's rehire in 2008 and prior to him taking his medical leave of absence in 2009." (Id. ¶¶ 26-27.)

Two of Rocco's supervisors, i.e., Russ Elzer ("Elzer") and Zitello, testified at their depositions that they were unaware of Rocco having any performance issues and that they would have rehired him. (Id. ¶¶ 19-20.) Zitello testified that "he did not recall making such a decision about ineligibility for rehire and was unaware of any performance issues." (Id. ¶ 20.)

On May 6, 2016, the EEOC wrote a letter to Rocco informing him that his "charge of employment discrimination [against GFS] was investigated pursuant to the Commission's policies and procedures in which it was determined the allegations were not substantiated[.]" (Id. ¶ 28.) Rocco received a right to sue letter from the EEOC dated May 24, 2016. (Id.)

8

## IV. Standard of Review

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a complaint should be "freely give[n]…when justice so requires." FED. R. CIV. P. 15(a)(2). "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." In re Burlington Coat Factory Securities Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). An amendment is futile when it would not cure the deficiency in the complaint, or, in other words, when the complaint, as amended, would still fail to state a claim upon which relief could be granted. Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (citing In re Burlington, 114 F.3d at 1434). "In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." Shane, 213 F.3d at 116. In other words, "if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency." Id. at 115.

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." Id.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.. . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

(Iqbal, 556 U.S. at 678) (quoting Twombly, 550 U.S. at 556) (internal citations omitted).

The Court of Appeals for the Third Circuit has instructed that "a court reviewing the sufficiency of a complaint must take three steps." Connelly v. Lane Constr, Corp., 809 F.3d 780, 876-87 (3d Cir. 2016). The court of appeals explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."Id. at 679. See also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir.2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth."(citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citing Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)).

V. **The Americans with Disabilities Act Amendments Act of 2008**

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). The PHRA includes similar

prohibitions on discrimination "because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act." 43 PA. CONS. STAT. § 955(d). Rocco asserts claims for retaliation under both statutes in this case.

The Americans With Disabilities Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, § 3406, 122 Stat. 3553, became effective on January 1, 2009, and applies to this case because Rocco alleges the adverse employment action took place on or around November 13, 2012, and March 27, 2013. The ADAAA made two significant changes to the ADA. First, the ADAAA expanded the definition of the term "disability," which had been narrowed by Supreme Court precedent; and second, the ADAAA changed the language of § 12112(a) to prohibit discrimination against a qualified individual "on the basis of" a disability, instead of "because of" a disability. Pub. L. No. 110–325, § 2(b)(1)-(6), 3(2)(a), § 4(a), 122 Stat. 3553, 3555; Kravits v. Shinseki, Civ. Action No. 10–861, 2012 WL 604169, at *6 (W.D. Pa. Feb. 24, 2012). The first change made it easier for an employee to prove that he or she was "a disabled person" under the ADA. The second change arguably replaced the more narrow determinative factor, or but-for, causation test with the less-exacting and more plaintiff-friendly motivating factor test. Siring v. Oregon St. Bd. of Higher Educ., 977 F.Supp.2d 1058, 1062-63 (D. Or. 2013) (finding that the ADAAA confirms that the motivating factor test, and not the determinative factor test, applies to disability discrimination claims); Graesslin v. Duluth Trading Co., Civ. Action No. 14-359, 2015 WL 2449588, at *7 n.8 (W.D. Wis. May 22, 2015) (citing Serwatka v. Rockwell Automation, Inc., 591 F.3d 957, 961-62 (7th Cir. 2010), and noting that the Court of Appeals for the Seventh Circuit has not yet decided whether the ADAAA changed the traditional "but-for" standard for causation applicable to ADA claims); but see Lewis v. Humboldt Acquisition Corp., Inc., 681

F.3d 312 (6th Cir. 2012) (refusing to import the motivating factor test, applicable to Title VII discrimination cases, 42 U.S.C. § 2000e-2(m), into the ADA, even after the ADAAA changed the language of § 12112(a)); Whalen v. City of Syracuse, Civ. Action No. 11-0794, 2014 WL 3529976, at *8 (N.D.N.Y. July 15, 2014) (requiring a plaintiff to demonstrate that her disability was "in the very least, 'a motivating factor'… if not a 'but-for' cause.").

The Pennsylvania legislature has failed to enact similar amendments to the PHRA, leading some courts to question whether claims made under the ADAAA and the PHRA can still be considered coterminous. Kieffer v. CPR Restoration & Cleaning Serv., LLC, Civ. Action No. 15-3048, 2016 WL 4119842, at *8 (E.D. Pa. Aug. 3, 2016); Canfield v. Movie Tavern, Inc., Civ. Action No. 13–03484, 2013 WL 6506320, at *5 (E.D. Pa. Dec. 12, 2013); Szarawara v. Cty. of Montgomery, Civ. Action No. 12–5714, 2013 WL 3230691, at *2 (E.D. Pa. June 27, 2013); Deserne v. Madlyn & Leonard Abramson Ctr. for Jewish Life, Inc., Civ. Action No. 10–03694, 2012 WL 1758187, at *3 n.3 (E.D. Pa. May 17, 2012). In this case, however, Pennsylvania's failure to amend the PHRA has no effect on the issues raised by the motion to dismiss or motion for leave to file a second amended complaint. There is no dispute in this case about whether Rocco was disabled at the time GFS made the decisions to not rehire him. The first change made to the ADA by the ADAAA, therefore, presently has no impact on this case. Likewise, disposition of the motion to dismiss or motion for leave to file a second amended complaint does not turn upon whether the motivating factor test or the determinative factor/but-for test applies to Rocco's claims for retaliation. The second change made by the ADAAA, therefore, presently has no impact on this case.

Because neither change made to the ADA by the ADAAA impacts this court's analysis or disposition of the motions pending before the court, the court need not distinguish between the

PHRA and the ADA in this opinion. Gera v. Cty. of Schuylkill, 617 F. App'x 144, 147 (3d Cir. 2015) (citing Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002), and finding that where ADA discrimination and retaliation claims fail, PHRA claims also fail); Macfarlan v. Ivy Hill SNK, LLC, 675 F.3d 266, 274 (3d Cir. 2012); Eshelman v. Agere Sys., Inc., 554 F.3d 426, 433 n.3 (3d Cir. 2009); Wilkerson v. New Media Tech. Charter Sch., Inc., 522 F.3d 315, 318-19 (3d Cir. 2008); Williams v. Phila. House. Auth. Police Dep't, 380 F.3d 751, 761 (3d Cir. 2004); Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997); Lescoe v Pa. Dep't of Corrections, 464 F.App'x 50, 52 n.6 (3d Cir. 2012); Flory v. Pinnacle Health Hospitals, 346 F.App'x 872, 875 n.2 (3d Cir. 2009).

## VI. Analysis

As explained in detail below, Rocco in the proposed second amended complaint set forth factual allegations sufficient to plausibly show a right to relief under the ADA and PHRA. The motion for leave to file a second amended complaint will, therefore, be granted, and the motion to dismiss the amended complaint will be denied as moot with respect to Rocco's claims for retaliation asserted under the ADA and PHRA.

To establish a prima facie case of retaliation under the ADA a plaintiff must show: "'(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" E.E.O.C. v. Allstate Ins. Co., 778 F.3d 444, 449 (3d Cir. 2015) (quoting Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002)). "Where, as here, the plaintiff claims that the retaliation took the form of a failure to hire, the plaintiff must also show: 4) that he applied for an available job; and 5) that he was qualified for that position." Morgan v. Fed. Home Loan Mortg. Corp., 328 F.3d 647, 651 (D.D.C. 2003).

The parties do not dispute that Rocco set forth factual allegations sufficient to plausibly show that he engaged in protected activity.[4] Rocco alleges that on May 27, 2010, he filed with the EEOC a charge of discrimination against GFS, on May 4, 2011, he filed with this court in Rocco I a complaint against GFS, and from May 27, 2010, through February 10, 2014, he litigated Rocco I. The parties also do not dispute that Rocco set forth factual allegations sufficient to plausibly show that he applied for an available job and was qualified for the position.

The dispute between the parties concerns the second and third elements of the prima facie case for retaliation. The second element requires the plaintiff to plausibly show an adverse employment action taken by the employer-defendant contemporaneous with or after the protected activity. Rocco set forth factual allegations sufficient to plausibly show that GFS took an adverse employment action[5] against him by not hiring him for the positions for which he

---

[4] Filing an EEOC charge is a protected activity under the ADA. Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 188 (3d Cir. 2003). Similarly, filing an employment discrimination lawsuit is a protected activity. Muhammed v. Phila., 186 F. A'ppx 277, 280 (3d Cir. 2006) ("Muhammed points to the prior lawsuit that he filed following his termination in 2002. He correctly claims that suit was protected activity."); Warshaw v. Concentra Health Servs., 719 F.Supp.2d 484, 500 (E.D. Pa. 2010) ("There is no dispute that plaintiff's decision to file this lawsuit constitutes a protected activity."). Participating in litigation is also considered a protected activity. 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual has…testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."); Hancock v. Sleepy's LLC, Civ. Action No. 07-5042, 2009 WL 347465, at *9 (E.D. Pa. Feb. 10, 2009) (citing Perry v. Harvey, Civ. Action No. 06-5386, 2008 WL 2704365, at *7 n.11 (D.N.J. July 3, 2008)).

[5] A "materially adverse employment action" is an action that might dissuade another reasonable employee from making or supporting a charge of discrimination. Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).

applied on or around November 13, 2012, and March 27, 2013.[6] The parties dispute, however, *at what point in time* the decision to not hire Rocco for those positions was made.

Rocco alleges in the proposed second amended complaint that on May 10, 2013, GFS—for the first time—informed him that on February 9, 2010, Zitello marked him ineligible for rehire based upon his work performance. The court at the hearing on February 7, 2017, explained that if the decision to not rehire Rocco was made on February 9, 2010, when Rocco was allegedly marked ineligible for rehire, Rocco could not set forth a plausible claim for retaliation because an adverse employment action cannot predate the protected activity, which in this case occurred on May 27, 2010—at the earliest—or February 10, 2014—at the latest. At the hearing held on February 7, 2017, however, counsel for Rocco argued that the factual allegations in the complaint, which also appear in the proposed second amended complaint, cast serious doubt about whether the decision to not rehire Rocco was *actually* made on February 9, 2010. Counsel for Rocco argued that the decisions to not hire Rocco for the positions were made on or around November 13, 2012, and March 27, 2013, when Rocco applied for those positions.

Rocco in the proposed second amended complaint alleges:

- on January 21, 2010, his employment with GFS was terminated, and he was told it was because "no jobs were available" (ECF No. 31-1 ¶ 9);

---

[6] In Rocco's supplemental brief, he argues that the adverse employment action in this case "occurred on May 10, 2013, in response to the federal litigation and specifically an answer to interrogatory, and first communicated that Mr. Rocco was ineligible for rehire." (ECF No. 30 at 3.) The court is satisfied at this stage of the litigation that Rocco set forth facts sufficient to plausibly show that GFS took an adverse employment action against him on or around November 13, 2012, and March 27, 2013, when he applied for but was not hired for positions with GFS. The actual dates of the adverse employment action will be subject to discovery between the parties. Whether GFS took an adverse employment action against Rocco when it communicated to him via the response to the interrogatories dated May 10, 2013, that he was marked ineligible for rehire on February 9, 2010, depends upon whether he was marked ineligible on February 9, 2010, or on a later date.

15

- on September 11, 2011, January 8, 2012, June 11, 2012, November 13, 2012, and March 27, 2013, he applied for posted positions with GFS (Id. ¶ 11);

- on May 10, 2013, "GFS responded to a second set of interrogatories and for the first time informed plaintiff that Chris Zitello had marked him ineligible for rehire allegedly on or about February 9, 2010" (Id. ¶ 13);

- "GFS claims that it reviewed Rocco's work history and complete performance record and deemed Rocco ineligible for rehire." (Id. ¶ 18);

- Russ Elzer, one of Rocco's supervisors, testified in his deposition that "he would like to hire…Rocco back because was qualified and had more experience than a new hire driver position" (Id. ¶ 19)

- Chris Zitello, one of Rocco's supervisors, testified in his deposition that "he did not recall making such a decision about ineligibility for rehire and was unaware of any performance issues" (Id. ¶ 20);

- "[n]o performance issues existed after Rocco's rehire in 2008 and prior to him taking his medical leave of absence in 2009" (Id. ¶ 27); and

- Rocco was not "selected for an interview for even one of the open positions or ever notified of a decision not to hire him" (Id. ¶ 32).

Based upon the foregoing allegations, a reasonable inference can be drawn that GFS did not mark Rocco ineligible for rehire on February 9, 2010; rather, a reasonable inference *can* be drawn that the decisions to not hire him for the positions for which he applied on November 13, 2012, and March 27, 2013, were made on or around those dates. In other words, a reasonable inference may be drawn from the well-pled allegations of the complaint that GFS' adverse employment actions, i.e., failing to hire Rocco on or around November 13, 2012, and March 27, 2013, were taken *contemporaneous with* or *after* Rocco engaged in protected activity, e.g., litigating Rocco I from May 27, 2010, through February 10, 2014.

For similar reasons, a reasonable inference can be drawn from the factual allegations in the proposed second amended complaint to plausibly show the third element of the prima facie case, i.e., a *causal* link between protected activity and the adverse action. To prove causation, a

plaintiff must provide enough evidence to allow a reasonable jury to infer that there was retaliatory intent and that the intent to retaliate was a but-for cause of the adverse employment action. In other words, a plaintiff must demonstrate that the employer would not have taken the adverse action absent the desire to retaliate. Univ. of Texas Southwestern Medical Center v. Nassar, 133 S.Ct. 2517, 2533 (2013).

Proof of causation may be established in a number of ways. First, temporal proximity can serve as circumstantial evidence "'sufficient to raise the inference that [plaintiff's] protected activity was the likely reason for the adverse action.'" Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir.1997) (quoting Zanders v. Nat'l R.R. Passenger Corp., 898 F.2d 1127, 1135 (6th Cir.1990)). "It is important to emphasize that it is causation, not temporal proximity itself, that is an element of the plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn." Kachmar, 109 F.3d at 178. The "mere fact that [an] adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir.1997), abrogated on other grounds by Burlington N. & Santa Fe Railway Co. v. White, 548 U.S. 53, 75 (2006).

The timing must be "unusually suggestive" to raise an inference of causation. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir.1997). Generally, a lapse of several months between the plaintiff's complaint and termination is not unusually suggestive of a retaliatory motive. See Groeber v. Friedman & Schuman, P.C., 555 F. App'x 133, 136 (3d Cir.2014) (three-month gap); Bailey v. Commerce Nat'l. Ins. Servs., Inc., 267 F. App'x 167, 170 (3d Cir.2008) (four-month gap); LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232–33 (3d Cir.2007) (three-month gap); Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d

Cir.2004) (two-month gap). In contrast, a lapse of a few days suggests a retaliatory motive sufficient to establish causation for the prima facie case. See Doe v. C.A.R.S. Prot. Plus, Inc., 527 F.3d 358, 369 (3d Cir.2008) (gap of three working days); Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir.1989) (two-day gap).

Absent temporal proximity, "circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference." Kachmar, 109 F.3d at 177 (quoting Zanders, 898 F.2d at 1135). Temporal proximity and a pattern of antagonism are not the only means to prove causation; the proffered evidence as a whole may be sufficient to raise an inference of intent. Id.

Here, based upon the factual allegations in the proposed second amended complaint:

− Rocco engaged in protected activities from May 27, 2010, through February 10, 2014, when he litigated Rocco I;

− Rocco did not have any negative performance reviews while employed by GFS, his supervisors wanted to rehire him, and GFS initially told him that he was not rehired because there were not any available positions for him;

− more than three years after Rocco's employment was terminated because there were not any available positions for him and *while* litigating Rocco I, GFS told Rocco on May 10, 2013, for the first time that he was not rehired because he was marked ineligible for rehire based upon poor work performance on February 9, 2010; and

− GFS took an adverse employment action against Rocco when it failed to rehire him on or about November 13, 2012, and March 27, 2013, i.e., in the midst of Rocco I;

It is plausible that a jury could draw a reasonable inference from the foregoing factual allegations that GFS did not hire Rocco for the positions for which he applied on or around November 13, 2012, and March 27, 2013, because he was *actively pursuing a discrimination lawsuit against the company*. In other words, it is plausible that a reasonable inference can be drawn from the factual allegations in the proposed second amended complaint that the but-for reason GFS did not rehire Rocco for those positions is he was litigating his discrimination claims against the

company. Under those circumstances, Rocco set forth factual allegations in the proposed second amended complaint to plausibly show a causal connection between his protected activity and GFS' adverse action. Rocco, therefore, set forth factual allegations sufficient to state a plausible claim for retaliation under the ADA and PHRA.

Permitting Rocco to file the proposed second amended complaint would not be futile. The court will, therefore, permit Rocco to file the proposed second amended complaint. GFS' motion to dismiss the amended complaint will be denied as moot with respect to Rocco's claims for retaliation asserted under the ADA and PHRA.

### VII. Conclusion

Rocco set forth sufficient factual allegations in the proposed second amended complaint to plausibly state a claim for retaliation under the ADA and PHRA. The motion for leave to file the proposed second amended complaint (ECF No. 31) will be GRANTED. The motion to dismiss the first amended complaint (ECF No. 21) will be DENIED as MOOT with respect to the claims for retaliation asserted under the ADA and PHRA.

On or before April 27, 2017, Rocco shall file the proposed second amended complaint.

An appropriate order will be entered.

BY THE COURT,

Dated: April 13, 2017
/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Chief United States District Judge